MARGARET V. CARTER *v.* AH SO, YOUNG QUONG HUNG, YOUNG YAU YIT, ONG CHEE MING, ONG AH SUN, YEONG QUONG TAT, CHEE CHAN HIN, YEONG CHOCK QUAN, YEONG QUON HING, YEONG QUONG CHOY, LAN PAU SING, UNG WONG YAU, CHA KING YOUNG, ONG HONG KAI, CHE YOU HIN, YEONG HOW CHAI, LAM WAI CHIN and YEONG KUN HOW, doing business as copartners under the name of WING CHONG WAI COMPANY, and A. H. LOO NGAWK, L. TUCKONG, LEONG NAM, TONG HUNG, LUM CHUNG WA, LUM SAY KAN, HONG QUON, TONG CHONG, SOY L. APANA, L. ALAI and TONG CHONG WAI, doing business as copartners under the name of SING CHONG & COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED OCTOBER 6, 1899.          DECIDED DECEMBER 21, 1899.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE STANLEY, IN PLACE OF JUDD, C.J., ABSENT.

In summary proceedings by a landlord to recover possession of the demised premises upon a forfeiture of the lease,

*Quaere,* whether the lessees' mortgagees if not in possession may properly be joined as co-defendants with the lessees who are in possession.

*Quaere,* whether a plea of the general issue is *prima facie* evidence that the defendant is in possession.

If it were necessary for the mortgagees to be in possession in order to join them as defendants, and if evidence outside of the plea of the general issue were necessary to show that they were in possession, then, since the plaintiff adduced no such evidence, the trial Judge should have granted defendants' motion made at the close of the plaintiff's case for a nonsuit as to the mortgagees.

But, since the mortgagees, upon the overruling of their motion, did not rest; but themselves introduced evidence from which the jury could infer that they were in possession, the error, if any, in overruling the motion for nonsuit was cured.

Rent is not apportionable as to time, and where it was paid in advance for six months in pursuance of the terms of the lease and the lessor entered to enforce a forfeiture before the expiration of that period, she was not obliged to tender back a part of the rent proportioned to the unexpired portion of the period. The retention of the entire rent did not operate as a waiver of breaches subsequent to the acceptance of the rent and up to the time of the entry.

In the case of continuing covenants, such as to maintain fences and allow a right of way, an acceptance of rent, while it operates as a waiver of all known breaches up to that time, does not operate as a waiver of the continuation of such breaches thereafter, even though no change occurs thereafter.

The mere fact that the lessor delayed bringing proceedings to recover possession for a few weeks after she entered and claimed a forfeiture, even though the lessees meanwhile with plaintiff's knowledge repaired the breaches for which the forfeiture was claimed, does not operate as a waiver or an estoppel as matter of law.

Where there was a breach of a covenant to maintain fences so as to prevent the passage of stock and a provision that the lessee should be liable for all damages resulting from the passage of stock, and a condition for forfeiture in case of the breach of any covenant, &c., a forfeiture may be enforced; the payment of damages is not an exclusive penalty for the breach of the covenant.

In determining whether there was a breach of such covenant the question is whether the fences would, not whether they did, prevent the passage of stock.

The lessees covenanted that the lessor should have an unrestricted right of way twelve feet wide through the demised premises along the Hauula boundary, &c. Although the lessees were not bound under this covenant to maintain the way, yet it would be a breach of their covenant if they by their positive acts should restrict it by digging into it on one side, even though the plaintiff could fill it up if she wished to.

The demised premises were described in the lease by reference to a map which showed that a stone wall was the boundary of the premises on the Hauula side, and the covenant provided that the right of

way should be through the demised premises along the Hauula boundary. The court rightly instructed the jury that the Hauula boundary must be taken for the purposes of this case to lie along the line of the wall.

Testimony as to what the parties understood to be the boundary, held to be either harmless error or admissible to explain, not to contradict, the terms of the lease.

The motive of the plaintiff in enforcing a forfeiture is immaterial, if she otherwise makes out a case.

OPINION OF THE COURT BY FREAR, J.

This is a summary proceeding (under Chapter 106 of the Civil Laws) by a landlord to recover possession of the leased premises upon an alleged determination of the tenancy by reason of forfeiture for breach of certain covenants and conditions of the lease on the part of the tenants. The proceedings were brought in the District Court of Koolauloa, Oahu, where judgment was rendered for the defendants, thence taken on appeal to the Circuit Court, where a verdict was rendered for the plaintiff, and is brought here on a number of exceptions by the defendants.

The plaintiff leased the premises in question, a rice plantation, on July 1, 1897, for a term of fourteen years at an annual rental of $1000, payable semi-annually in advance, to Kwong Tai Wai and Company, who on the third of the following September assigned the lease to the defendants Wing Chong Wai Company, who in turn on the same day mortgaged the same to the defendants Sing Chong & Company.

The causes of forfeiture relied on are breaches of covenants (1) to keep the premises fenced, (2) to allow the lessor an unrestricted right of way twelve feet wide through the premises and (3) that the lessor should have the unrestricted right of a two-inch flow of water from the artesian well on the premises. The lease contained the usual provision that upon the breach of any of the covenants on the part of the lessees, their executors, administrators or assigns, the lessor, her executors, administrators or

assigns might enter without notice or demand and thereby determine the lease and the estate thereby created.

The lessor's husband, as her agent, last accepted rent on July 1, 1898, in advance for the ensuing half year and on the 9th of the following November entered upon the premises and gave written notice of the determination of the lease and demanded possession for breach of the covenants mentioned. This action was begun on the 5th of December following.

At the close of the plaintiff's case, the defendants moved to dismiss the action as to Sing Chong & Co. on the ground of misjoinder for the reason that they were not shown to be in possession or to be tenants of the plaintiff. This motion was overruled and defendants excepted. It is contended on behalf of the plaintiff that inasmuch as the lease was assigned to Sing Chong & Co., although as security only, they must be held to have the legal title and to be liable as assignees, whether in possession or not, upon all the covenants that run with the land. *Hop Sing Co. v. Kam On*, 7 Haw. 144; *Cartwright v. Widemann*, 9 Haw. 693. Let us assume that such is the law. It does not necessarily follow that a summary proceeding of this kind could properly be brought against them if they were not in possession. The lessees themselves, whether they had mortgaged their lease or not, would likewise be liable upon their covenants but it would not necessarily follow that summary proceedings could properly be brought against even them if they were not in possession.

The statute seems to contemplate not only that the relation of landlord and tenant should exist but also that the tenant should be in possession. The proceedings are wholly statutory and may be pursued only so far as permitted by the statute. Section 1679 of the statute permits the landlord to proceed summarily only "whenever any lessee or tenant  *  *  *  shall *hold possession*  *  *  *  without right," &c., and Section 1680 requires it to be alleged in the complaint, "that the *defendant is in the possession*  *  *  *  of the lands  *  *  *, which *he holds* unlawfully," &c., "and no other declaration shall be recognized." See also 12 Enc. Pl. & Pr. 880 and note 2. No doubt the mort-

gagees are interested in the result, but the statute does not permit all persons in interest to be made parties, however desirable that may be; it permits those only to be made defendants who are in possession, for the proceeding is purely of a possessory nature and does not involve questions of title and the object is merely to put out of possession those who are in possession. *Kualana v. Yong Young*, 9 Haw. 225.

But may not the mortgagees be joined as landlords with their mortgagors as tenants? In jurisdictions in which the action of ejectment may try the title to the land as well as the right of possession, landlords may be joined as co-defendants with their tenants. *Un Wong v. Kan Chu*, 5 Haw. 225; *Hale v. Maikai*, 12 Haw. 178; and mortgagees and mortgagors have been regarded as holding the relation of landlord and tenant for such purposes. *Marvin v. Denison*, 20 Vt. 662. But where ejectment is a possessory action only and does not try the title, landlords cannot properly be joined as co-defendants with their tenants, and if they are so joined a nonsuit may be granted as to them. *Demick v. Deringer*, 32 Cal. 448. Summary proceedings under our statute are, as we have seen, merely possessory and would therefore seem to be analogous to those actions of ejectment which are merely possessory, in which landlords cannot properly be joined with their tenants. See *Oahu L. & B. Co. v. Ah Yok*, 11 Haw. 418; *Kualana v. Yong Young, supra*. Again, under the English statute, 11 Geo. II. c. 19, and similar statutes in many of the United States, landlords may be admitted at their option to defend actions of ejectment brought against their tenants, although the action must be brought against the tenants alone in the first instance, and it is held that mortgagees and mortgagors are landlords and tenants for such purposes. 7 Enc. Pl. & Pr. 307, 312. But we have no such statute and these proceedings were not brought against the tenants alone in the first instance, nor have the mortgagees sought to be admitted to defend.

It is therefore at least very doubtful if mortgagees not in possession may be joined as co-defendants with the mortgagors, the lessees, in proceedings of this character.

It is further contended that, even if Sing Chong & Co. cannot be deemed to be in possession or to be proper defendants as matter of law merely by reason of their being mortgagees, still the jury would be justified in finding as matter of fact that they were in possession. Just how far proof of defendant's possession is required in actions of ejectment, and by analogy in proceedings of this character, is perhaps not altogether certain. In some states by statute, in others by judicial decision, a plea of the general issue is regarded as *prima facie* evidence of the defendant's possession, and this court has expressed a doubt as to whether such is not the law, except in actions by a tenant in common or joint tenant against a cotenant. *Liena v. Pahau*, 4 Haw. 475. But assuming that the plaintiff must introduce evidence to show that the defendant is in possession, it is clear that no such evidence as to Sing Chong & Co. was introduced in this case up to the time when the motion to dismiss as to them was made. It is true that there was evidence tending to show that one Akana acted with the knowledge of the lessees, in a way to indicate that he controlled the possession of the premises, for he paid the rent and acted as if he controlled the manager and men operating the rice plantation and in actual occupation thereof. And it is well settled that for the purposes of ejectment and summary proceedings of this nature a person, to be in possession, need not be personally an occupant of the premises, but that it is sufficient if the premises are subject to his will and dominion. Mortgagees may be in possession through mortgagors acting for them. See *Harrison v. Marks*, 11 Haw. 506. But there is no evidence in the plaintiff's case that Akana was a member of Sing Chong & Co. or represented them in any way. Consequently, if such evidence were necessary the motion to dismiss the action as to them should have been granted. But, when it was denied, Sing Chong & Co. did not rest, but proceeded to introduce evidence for the defense and showed by their own witnesses that Akana was a member of their company. This cured the error, if there was error. *Liena v. Pahau, supra.*

Defendants moved also at the close of the plaintiff's case for

judgment on the ground that at the time the surrender of the premises was demanded, the plaintiff did not offer to return to the defendants a part of the rent paid in advance for six months on the first day of July previous, namely, a part proportioned to the portion of the six months unexpired at the date of the demand of possession. This motion was overruled and the defendants excepted. It is contended that, by electing to retain the rent for the entire half year including a part then unexpired, the plaintiff must be deemed to have waived her right to enforce a forfeiture for any breach committed up to that time. But in the absence of a statute or express provision to the contrary, rent is not apportionable as to time. It is regarded, not as earned from day to day, but as an entire debt payable on the rent days as a whole or not at all according to the circumstances. If the tenancy were determined between two rent days through the fault of the landlord and the rent were payable at the end of the period, the landlord would not be entitled to any rent for that period. In this case the rent was payable in advance on the first day of the period and the tenancy was determined, if at all, through the fault of the tenants. The lessor would be entitled to recover the whole of it even after the enforcement of the forfeiture if she had not previously received it. 3 Suth. Dam. 118. Having previously received it, she was under no obligation to tender back a portion of it as a condition of enforcing the forfeiture.

Exceptions were taken to the court's refusal to give several requested instructions to the effect that the acceptance of the rent on July 1, 1898, operated as a waiver as to all known breaches up to that time and also thereafter in so far as no change occurred thereafter. The court gave the first part of this instruction but refused to give the latter part. It is contended that the breaches, if any, occurred before the acceptance of the rent on July 1, 1898, and that thereafter no change took place, the fences, for instance, being merely allowed to remain in the state of unrepair in which they were before that date, and the restriction of the right of way being merely allowed to continue. But the covenants in question are continuing covenants, and where there are

continuing breaches of such covenants, the acceptance of rent operates as a waiver only up to the time of such acceptance and does not preclude the lessor from taking advantage of breaches allowed to continue thereafter. 2 Taylor, Ld. & Ten., Sec. 500; *Henrique v. Paris*, 10 Haw. 408.

The third of the covenants for the breach of which these proceedings were brought was that the lessor should "have the unrestricted right of a two-inch flow of water," &c. The plaintiff contended that the defendants shut off the water. The court instructed the jury in effect that the defendants would be liable only in case the water was shut off by them or their servants or by their permission or sufferance and would not be liable if it was shut off by strangers without the knowledge, connivance, encouragement or consent of the defendants, and as there was no evidence as to who shut off the water, if it was shut off at all, the plaintiff does not now rely upon a breach of this covenant. This leaves the covenants as to fences and right of way to be considered.

Defendants contend that the plaintiff gave them time in which to repair the fences and road and that such repairs were made, after the plaintiff entered. This contention is made under exceptions to the refusal of the court to give certain requested instructions to the effect that if the plaintiff gave such time or led the defendants to believe so and such repairs were made she could not insist on a forfeiture, and an exception to the verdict as contrary to the law and the evidence. But the court did charge substantially as requested on this point and the evidence was such as to support a finding that the plaintiff did not give such time. The mere fact that the plaintiff waited several weeks after entry before instituting proceedings to enforce the forfeiture, even though the defendants meanwhile made such repairs with plaintiff's knowledge, would not amount to a waiver or an estoppel as matter of law. The plaintiff had already elected to insist on a forfeiture and had so notified the defendants and had demanded possession. The tenancy thereupon ended. These proceedings were afterwards instituted merely to recover the possession which the

defendants ought to have surrendered when it was demanded and which they were holding unlawfully. To constitute a waiver or an estoppel something else than a few weeks' delay in bringing these proceedings would be required on the part of the plaintiff.

The covenant in regard to fences was that the lessees "will fence and keep fenced all lands included in this lease so as to prevent the passage of stock, and be liable for all damage resulting from the passage of stock from their said inclosure into the lands" of the lessor, &c. Defendants contend that the only penalty for a breach of this covenant is shown by the covenant itself to be the payment of the damages resulting from the passage of stock, and that the penalty of forfeiture does not apply to this covenant. But the lease clearly provides for a forfeiture upon a breach of "any of the covenants," &c., of which this certainly is one, and there is nothing to indicate that the payment of damages was intended to be the only penalty. We find no exception under which this question can be raised.

It is contended further, that the only proof that there could be of the breach of this covenant is that stock did pass, and that there was no such proof. There was testimony that the fences were completely gone in some places and out of repair in other places, but it is contended that there is no testimony that stock actually passed through. This question of law is not raised by the exceptions. The court instructed the jury on the theory that the covenant called for fences that would prevent the passage of stock, not fences that did prevent their passage, and no exception was taken. On the contrary defendants themselves asked the court to charge that "any fence that you are satisfied *would* prevent the trespass of stock will comply with the covenant as to fences." In our opinion the instruction was correct.

The covenant as to right of way is that the lessor "shall have an unrestricted right of way twelve feet wide through the demised premises from the mauka land along the Hauula boundary to the extreme Northeast corner of the rice field; thence in an Easterly direction to the threshing floor and around the said threshing floor, and thence in a Northeasterly direction along old Kuanu to

Awai." The breach, if any, of this covenant consisted in defendants' digging a rice patch so that one corner of it extended about five feet into the road, thereby leaving the road only seven feet wide at that point, which width the plaintiff's evidence tended to show was insufficient to allow her heavy carts or wagons to pass. The defendants attempted to show that the carts or wagons could pass. The evidence as a whole was sufficient to support a finding that the road was narrowed by the defendants to a width of seven feet at this point and, if it was necessary to so find, that this was too narrow for the plaintiff's requirements. It is contended that, assuming these to have been the facts, there was no breach of the covenant because the covenant provided merely that the lessor should "have an unrestricted right of way," and that therefore the defendants were bound, not to make or keep in repair the way, but only to allow the plaintiff to have a way, and that there was no evidence to show that they did anything to prevent the plaintiff from filling in the corner of the rice patch, if she wished a wider road at that point. It is true, the defendants were not bound to keep the way in repair, except in so far as such repairs might be rendered necessary by their own wrongful acts, and the court so instructed the jury, but the court also charged that if they dug the rice patch so as to make it extend within the prescribed twelve feet and so that such digging would interfere with the use of a portion of the right of way as such, that would be a restricting the right of way and would constitute a breach of the covenant, and that the effect of the word "unrestricted" as used in the lease was that the defendants should not by any act of theirs knowingly or wilfully cause, permit, allow or suffer the interruption of the use or enjoyment of the thing or right granted. This was as favorable an instruction as the defendants could expect upon this point and they took no exception to it.

Exceptions were taken to the instructions that the Hauula boundary referred to in the covenant relating to the right of way must be taken for the purposes of this case to lie along the line of the stone wall referred to by the witnesses, and that the plaintiff is entitled under the lease to an unrestricted right of way

twelve feet wide next adjoining that stone wall as well as along the other places mentioned in that covenant of the lease. It was at a point along the stone wall that the rice patch was dug into the road. An exception was taken also to the following question put by plaintiff's counsel to Dr. Carter, plaintiff's husband and agent: "Doctor, you may state where the boundary was, the Hauula boundary was, within the understanding and intention, if you know, of the parties to this lease?" The answer to this question was that "the boundary as understood by us was the wall, an old stone wall," &c. The witness also testified that there had always been a road along it. Afterwards on cross-examination he said in substance that he had always understood that the wall was on the Hauula boundary but that he had heard that stone walls were often made only approximately upon boundaries according to where it was convenient to get stones and that he was then having a surveyor run the line exactly, but that he thought from a rough survey of his own that the wall was on the boundary at the place where the road was dug into though he could not tell certainly until the survey was completed. It is urged that the court erred in instructing the jury that the Hauula boundary mentioned in the covenant relating to the right of way must be taken for the purposes of this case to be along the line of the stone wall, and that the allowance of the question objected to was a violation of the rule that parol evidence is inadmissible to vary the terms of a written instrument.

The premises are described in the lease as "all that portion of the land of Makao aforesaid, now occupied by the party of the second part, the same being bounded by Kapaka upon the one side, and enclosed by fence upon the other sides, and of which a plat is hereto annexed as 'Exhibit A' for full description in lieu of field notes, metes and bounds." The plat referred to shows that the demised premises were bounded on the Hauula side by the stone wall in question. The most that defendants could contend is that, since the covenant provides for a right of way twelve feet wide along the Hauula boundary, and since there were seven feet between the rice patch and the stone wall, then if the Hau-

ula boundary were not along the line of the wall but outside of it, there might have been twelve feet clear between the rice patch and the boundary and hence no breach of the covenant. But by the plat, which was made a part of the lease, the stone wall was the boundary of the demised premises, and by the covenant the right of way was to be "through the demised premises;" hence the right of way must have been intended to be wholly inside the wall. In other words, the wall must have been regarded by the parties as marking the Hauula boundary. Hence the instructions of the court upon this point were correct, and the admission of the testimony objected to was at most harmless error. If the location of the boundary should be regarded as uncertain from the description in the lease, the testimony taken as a whole and aside from the particular form of the questions asked would have been admissible to explain, not to contradict, the terms of the lease. *Nahaolelua v. Kaaahu,* 10 Haw. 18.

The question of motive was argued to some extent. Defendants contend that the breaches were at most merely technical, that they occurred through inadvertence rather than wilfulness or maliciousness and that the plaintiff is attempting to take advantage of the breaches, not because she cares about them, but in order that she may wrest from the defendants a property which they have improved and made valuable. On the other hand the plaintiff contends that she and her agent repeatedly requested the defendants to remedy the breaches and gave them ample time in which to do so but that they always replied "by and by" and that this continued for over a year until patience ceased to be a virtue, and that no disposition to make the repairs was manifested by the defendants until they were given notice of the termination of their lease, when they suddenly became active. The trial Judge allowed the defendants to go into the question of the plaintiff's motive to some extent as bearing upon the question of credibility. So far as the law is concerned, if the plaintiff has made out a case on the facts, it is immaterial what her motive was. So far as the facts are concerned, they were for the jury to pass upon, and they were sufficient to support the verdict in

this case. The law does not favor forfeitures. In some cases equity relieves against them. Whether relief could have been obtained in equity in this instance we need not undertake to say. See *Henrique v. Paris, supra.* We are unable to discover any legal ground upon which the enforcement of the forfeiture can be avoided in this proceeding.

The exception to the instruction that nine out of twelve jurors might render a verdict and to the verdict so rendered must be overruled in accordance with the former decisions of this court.

The exceptions are overruled.

*Monsarrat & Weber* for the plaintiff.

*Kinney, Ballou & McClanahan* and *Cecil Brown* for the defendants.