126 N.J. Super. 81 (1973)
312 A.2d 870
YELLOW CAB COMPANY OF CAMDEN, A CORPORATION OF NEW JERSEY; CHARLES NICKLES AND RAYMOND CONOVER, INDIVIDUALLY AND AS REPRESENTATIVES OF ALL THE DRIVERS EMPLOYED BY YELLOW CAB COMPANY OF CAMDEN, PLAINTIFFS-APPELLANTS,
v.
THE STATE OF NEW JERSEY, THROUGH THE DIRECTOR OF WAGE AND HOUR BUREAU, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1973.
Decided November 27, 1973.
*83 Before Judges CARTON, SEIDMAN and GOLDMANN.
Mr. James J. Shrager argued the cause for appellants (Messrs. Hannoch, Weisman, Stern & Besser, attorneys; Mr. Henry J. Tyler, on the brief).
Mr. Howard S. Simonoff filed a statement in lieu of brief, amicus curiae, on behalf of Teamsters Local 676 (Messrs. Tomar, Parks, Seliger, Simonoff & Adourian, attorneys).
Ms. Mary Ann Burgess, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
*84 The opinion of the court was delivered by CARTON, P.J.A.D.
The principal question to be resolved on this appeal is whether taxi companies are subject to the overtime provisions of the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a4. Related issues presented are whether these provisions represent a valid exercise of legislative power and whether the Fair Labor Standards Act, 29 U.S.C.A., § 201 et seq., has preempted the area.
Plaintiff Yellow Cab Company of Camden and individuals representing themselves and all other drivers of the company sought a declaratory judgment to determine that the overtime provisions were inapplicable. The trial court held that such provisions did apply; that they represented a valid exercise of legislative power, and that there was no preemption. Plaintiffs challenge each of these determinations.
The facts are brief and undisputed. Yellow Cab is a corporation organized under the laws of New Jersey, with its principal place of business in Camden. The two individual plaintiffs are employees of Yellow Cab and members and shop stewards of Local 676 of the Teamsters Union.
Yellow Cab is a carrier of passengers for hire. It operates under franchises which are issued and regulated by the State of New Jersey. N.J.S.A. 48:16-2. Its drivers are compensated on a commission basis which was negotiated by collective bargaining so as to include compensation for overtime work. A driver with six months experience receives a commission of 48% of all revenues taken in. Fringe benefits to the drivers and employee taxes constitute an additional 12% of revenues collected.
A driver for Yellow Cab, after reporting to the garage and punching a time card, is free to operate entirely on his own. Each driver's earnings are completely dependent upon his own efforts. Earnings vary from a low of $3,100 to a high of $8,400 a year.
In 1970 the State of New Jersey filed a complaint in the Camden Municipal Court charging Yellow Cab with multiple criminal violations of N.J.S.A. 34:11-56a4. That litigation *85 precipitated the present declaratory judgment action. Prosecution of the criminal portion was then stayed by consent of the parties, with approval of the Camden Municipal Court, pending determination of the action for declaratory judgment.

APPLICABILITY OF OVERTIME PROVISIONS TO TAXICAB INDUSTRY
Yellow Cab's basic argument is that it is a common carrier by motor bus and thereby exempted from the overtime provisions of the New Jersey Wage and Hour Law. The statute (N.J.S.A. 34:11-56a4) specifically provides that the overtime provisions shall not apply to employees of such a carrier. In pertinent part it reads:
Every employer shall * * * pay to each of his employees wages at a rate * * * 1 and 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week * * *. The provisions of this section * * * shall not apply to * * * an employee of a common carrier of passengers by motor bus * * *. [Emphasis added]
Plaintiffs' thesis is that the words "motor bus" as used in the statute must be construed to include taxicabs, thereby making the statutory exemption applicable to company drivers.
We deem such construction strained and unnatural in light of the legislative history of the provision, the salutary public policy embodied in it, and the specific language used in the statute.
In 1966 the Legislature enacted the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq., declaring it to be
* * * the public policy of this State to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being.
*86 At the time the New Jersey Wage and Hour Law was enacted the Federal Fair Labor Standards Act exempted not only motor bus carriers, but also specifically excluded "any employee of an employer engaged in the business of operating taxicabs." 29 U.S.C.A., § 213(a) (12); (b) (7); thereafter amended, P.L. 89-601, 80 Stat. 833, 834, 836-838 (Sept. 23, 1966). The New Jersey statute, however, although exempting "common carriers of passengers by motor bus," contains no such exclusion for either taxicab operators or for the taxicab industry.
The exemptions from the Fair Labor Standards Act were matters of great public interest and aroused spirited debate at the time of the enactment of the New Jersey Wage and Hour Law. Presumably the Legislature was well aware of the distinct exclusions from the federal law for "motor buses" and for "taxicabs" and deliberately determined that the interests of the citizens of New Jersey were best served by not granting a similar exclusion to the taxicab industry from the provisions of the Wage and Hour Law.[1]Cf. Male v. Pompton Lakes Mun. Util. Auth., 105 N.J. Super. 348, 355-356 (Ch. Div. 1969).
The humanitarian and remedial nature of this legislation requires that any exemption therefrom be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of the Legislature. See A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876 (1945). The remedial nature of this law suggests also that the burden of proving that the employees' activities fall within the claimed exemption *87 should be imposed on the employer. Sherman v. Coastal Cities Coach Co., 4 N.J. Super. 283, 290 (App. Div. 1949).
The words "taxicab" and "motor bus" are words of common use. Such words are to be taken in their natural, plain, obvious and ordinary signification. A subtle or forced construction for the purpose of either extending or limiting their operation should not be indulged. Jamouneau v. Harner, 16 N.J. 500 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). See N.J.S.A. 1:1-1.
The term "motor bus" is not specifically defined in the New Jersey Wage and Hour Law's special definition section, N.J.S.A. 34:11-56a1. Thus, the term must be given its plain and ordinary meaning. "Motor bus" does not normally include the type of vehicle commonly called a "taxicab." Webster's Third New International Dictionary (1966) defines "motor bus" as "an automotive omnibus," with "omnibus" in turn defined as "a public vehicle usually automotive and 4-wheeled and designed to carry a comparatively large number of passengers: bus"; whereas a "taxicab" is termed "a chauffeur-driven automobile available on call to carry a passenger between any two points (as within a city) for a fare determined by taximeter * * *." (Emphasis supplied).
It is undeniable that in everyday use a distinction is made between taxicabs and buses. Indeed, plaintiffs readily admit that such is the case. However, plaintiff Company cites in support of its exemption claim definitions which appear in the Public Utilities Code (N.J.S.A. 48:4-1) and the Motor Vehicles Traffic Act (N.J.S.A. 39:1-1).
In rejecting plaintiff's contention that it is a "common carrier of passengers by motor bus," and therefore exempt from the overtime provisions of N.J.S.A. 34:11-56a4, Judge Wick held that such definitions in those statutes shed no light on the meaning of "motor vehicle" as it is used in the Wage and Hour Law since they were enacted for entirely different purposes. In so holding he followed State v. Comfort Cab, Inc., 118 N.J. Super. 162 (Cty Ct. 1972), which involved a fact situation essentially the same as the *88 one before us. We agree with the conclusions stated in Comfort that
* * * there is no reason for giving the term "motor bus" in the foregoing exemption any meaning other than ordinarily given to the term. "Motor bus" normally does not include a taxicab.

* * *
Thus, the statutory exemption for a motor bus, which is to be strictly and narrowly construed as well as defined by its ordinary and plain meaning, does not include "taxicabs." [at 175-176]
Equally unpersuasive is plaintiffs' alternative argument that taxi operators are "outside salesmen," as defined by Regulation 4.4 (N.J.A.C. 12:56-4.4), and therefore exempt from overtime provisions of the New Jersey Wage and Hour Law. Those provisions, in pertinent part, read:
* * * The wage rates fixed in this section shall not be applicable to employees engaged in domestic service in the home of the employer, to persons under the age of 18 or to persons employed as outside salesmen as such term shall be defined and delimited in regulations adopted by the commissioner.
The Commissioner of Labor and Industry is specifically authorized by N.J.S.A. 34:11-56a5 to
* * * make such administrative regulations as he shall deem appropriate to carry out the purposes of this act or necessary to prevent the circumvention or evasion thereof, and to safeguard the minimum wage rates hereby established. Such regulations may include regulations defining and governing outside salesmen * * *.
Regulation 4.4 promulgated by the Commissioner defines "outside salesmen" as follows:
[Any employee]
(a) Who is employed for the purpose and who is customarily and regularly engaged away from his employer's place or places of business in:
(1) Making sales, or
(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
*89 (b) Whose hours of work of a nature other than that described in paragraph (a) (1) or (a) (2) of this section do not exceed 20 per cent of hours worked in the workweek by the outside salesman:
Provided, that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt work. Employees who basically drive vehicles and who only incidentally or occasionally makes sales do not qualify for this exemption.
Plaintiffs stress the first portion of the quoted regulation, maintaining that since the drivers are regularly engaged away from the employer's place of business in furnishing services for which they are paid a consideration by the customer, they fall within the category "outside salesmen." On the other hand, defendant relies on the last sentence of the regulation, asserting that such individuals are basically drivers who only incidentally or occasionally make sales. Hence they urge that such drivers do not qualify for the exemption.
We believe that the trial court properly decided that taxicab drivers are primarily service personnel whose primary function is driving, not selling. Consequently, the Yellow Cab taxicab drivers cannot rightly be described as "outside salesmen" within the meaning of the regulation.
Yellow Cab's arguments as to the administrative difficulties which would arise, and the adverse economic effect which would accrue, from making it subject to the overtime provisions are not convincing. We see no insurmountable problem. N.J.S.A. 34:11-56a4 mandates that covered employees be paid 1 1/2 times their "regular hourly wage" for each hour of working time in excess of 40 hours in any week. "Regular hourly wage" is defined as "the amount that an employee is regularly paid for each hour of work as determined by dividing the total hours of work during the week into the employee's total earnings for the week, exclusive of overtime premium pay." N.J.S.A. 34:11-56a1(e). Pursuant to N.J.S.A. 34:11-56a5, the Commissioner promulgated the following regulation regarding determination of "regular hourly wage":
*90 The law does not require employers to compensate employees on an hourly rate basis. Employees earnings may be determined on a piece-rate, salary, bonus, commission or other basis, but the overtime compensation due to employees must be paid on the basis of the hourly rate derived therefrom. Therefore, the regular hourly wage of an employee is determined by dividing his total remuneration for employment, exclusive of overtime premium pay, in any work week, by the total number of hours worked in that work week for which such compensation was paid. [N.J.A.C. 12:56-3.5(b)]
Application of the formula contained in the regulation to the taxicab drivers' situation places them on the same level as other employees who are paid on a piece-rate basis.
Plaintiffs' contention that 12% of every dollar of fares goes toward payment of employee tax and fringe benefits does not appear to be borne out by the record. The agreement between Yellow Cab and the taxi drivers' union provides for definite fringe benefits and in no wise conditions such benefits on the fluctuating earnings of driver employees. Increased earnings to employees of plaintiff company in the form of overtime compensation would increase the amounts of money to be paid by the company in the form of fringe benefits.
The assertion that the taxicab company will be "financially destroyed" should the provisions be applied to it is likewise unsupported by anything in the record. The agreement itself makes provision for negotiation of a revised method or rate of pay should the drivers become subject to the overtime pay provisions of the Fair Labor Standards Act or similar state or local law. It is there provided that in such event:
VI. * * * [T]he parties will negotiate a revised method or rate of pay for such employees where necessary, to the end that the employee's pay for each work week after such revision will be the same as for a similar work week before such revision, and that the company will be in full compliance with such law or laws. * * *
Moreover, pursuant to N.J.S.A. 34:11-56a13,
* * * The wage board [of the Department of Labor and Industry] may recommend establishment or modification of the number of *91 hours per week after which the overtime rate established in section 5 [section 34:11-56a4] shall apply and may recommend the establishment or modification of said overtime rate * * * [Emphasis added].
Provision is thereby made for those industries falling within the purview of the New Jersey Wage and Hour Law where, due to their unique status, application of said act could conceivably work undue hardship. This section will permit a more particularized approach to the overtime problem consonant with the remedial scope of pertinent regulatory legislation. Plaintiff company's election to pursue this administrative remedy could well alleviate, in large measure, the very inequities of which it now complains.

PREEMPTION OF AREA BY FEDERAL LEGISLATION
Plaintiffs argue that by virtue of the Fair Labor Standards Act (FLSA) (29 U.S.C.A. 201 et seq.) the Federal Government has preempted the field of wages and hours, and, therefore, the New Jersey statute (N.J.S.A. 34:11-56a4 et seq.) does not apply. The trial court took judicial notice of the fact that Yellow Cabs cross the Delaware River Bridge into Pennsylvania and would therefore be subject to the federal act.
The overtime provisions of the FLSA appear in 29 U.S.C.A. § 207. 29 U.S.C.A. § 213(b) (17) specifically exempts taxicab drivers from those provisions.
The United States Constitution gives Congress the exclusive power "to regulate commerce * * * among the several states * * *." U.S. Const., Art. I, § 8, cl. 3. The FLSA and the amendments thereto were adopted pursuant to this grant of power.
A state, however, may concurrently exercise its police power as derived from the Tenth Amendment's reservation to the states of powers not delegated to the Federal Government nor prohibited to the states. Such an exercise of power "will be sustained even though it may affect interstate *92 commerce incidentally, so long as it does not unduly burden it." Moyant v. Paramus, 30 N.J. 528, 545 (1959); Burton v. Sills, 99 N.J. Super. 516, 526 (Law Div. 1967), aff'd 99 N.J. Super. 459 (App. Div. 1968), aff'd 53 N.J. 86 (1968), app. dism. 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969).
The Legislature of this State, in enacting the overtime provision of the Wage and Hour Law requiring payment of time and a half for each hour worked in excess of 40 hours in a work week (N.J.S.A. 34:11-56a4), did so in a permissible exercise of the police power. The New Jersey act does not exclude taxicab drivers from the protective ambit of its overtime provisions.
Plaintiff drivers argue that FLSA has preempted them by way of its exemption. Preemption is governed by the intent of Congress regarding the federal act. Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). In Huron the court stated:
In determining whether state regulation has been pre-empted by federal action, "the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal Legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted is in actual conflict with the law of the state." [at 443, 80 S.Ct. at 816]
The doctrine was further refined in Florida Avocado Growers v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), in which the Supreme Court said that such preemptive intent will not be implied unless "either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakenly so ordained."
29 U.S.C.A. § 218(a), in pertinent part, reads as follows:
*93 No provision of this Chapter * * * shall excuse non-compliance with any Federal or State Law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Chapter, or a maximum workweek lower than the maximum workweek established under this Chapter. * * *
Plaintiffs argue that this section permitting a higher minimum wage, or shortening of the work week, cannot be interpreted as permitting the State to regulate exempt occupations. We do not read that provision as clearly evidencing a congressional intention to displace all state regulation in the field of hours and wages.
Congress has been silent on the question of state regulation of occupations exempted from the federal act. We are not convinced that simply because the federal act exempts this area, state regulation is precluded. The purpose of Congress in enacting the FLSA was to improve substandard labor conditions. Roland Electric Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1945). The purpose in enacting the maximum hour-overtime provisions was to induce employers, by reason of increased labor costs, to reduce the hours of work and employ more men, and to compensate the employees for the burden of a long week. Waling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705 (1944). The New Jersey Wage and Hour Law, by including taxicab drivers, does not present any obstacle to the accomplishment of those objectives and purposes. Rather, it extends these same considerations to this occupation.
This is not a case where compliance with both the federal and state acts would be a physical impossibility demanding preemption. Cf. Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). The regulation of overtime pay for taxicab drivers is not a subject by its very nature admitting only of national supervision. Cf. Cooley v. Board of Wardens, 53 U.S. 299, 12 Haw. 299, 13 L. Ed 996 (1851). Nor is it a subject demanding exclusive federal regulation in order to achieve uniformity vital to national *94 interest. Cf. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 241, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
We conclude that there is no conflict between the state and federal act and therefore no preemption, and that the State may properly regulate in this area.

CONSTITUTIONALITY OF CONSTRUING WAGE AND HOUR LAW TO INCLUDE TAXICABS
Finally, plaintiffs urge that construction of the Wage and Hour Law to include taxicab companies and exclude "bus" companies violates the Constitutions of New Jersey and of the United States.
We perceive no merit in the argument that such a distinction is demonstrably an arbitrary and unfair classification, in violation of the equal protection clauses of the New Jersey and United States Constitutions. N.J. Const. (1947), Art. I, pars. 1 and 5; U.S. Const., Amend XIV, § 1.
An act of the Legislature is presumed to be constitutional; the burden of showing otherwise is on the party asserting its unconstitutionality. David v. Vesta Co., 45 N.J. 301, 315 (1965). Authority to make classifications and exemptions is generally a legislative and not a judicial function. Hotel Suburban System v. Holderman, 42 N.J. Super. 84, 93 (App. Div. 1956). Unless the statute plainly exceeds the constitutional power of the Legislature, a court should not adjudge it invalid. Thomas v. Kingsley, 43 N.J. 524, 530 (1965). As the court pronounced in the case of N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581 (1967), app. dism. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967),
* * * The Legislature has wide discretion in the creation of or recognition of classes for different treatment. Equal protection does not require that all persons be dealt with identically. If there is some reasonable basis for the recognition of separate classes, and the disparate *95 treatment of the classes has a rational relation to the object sought to be achieved by the law makers, the constitution is not offended. * * * [48 N.J. at 601]
Plaintiffs argue that in light of the purpose of the statute, the inclusion of taxi drivers, while bus drivers are excluded, is arbitrary and irrational.
Defendant Director asserts that the Wage and Hour Law was enacted to protect workers from the effects of working long hours, as well as to regulate compensation. He points out that bus drivers generally work an eight-hour day, on a definite schedule. Taxicab drivers, however, work generally a longer day, and the demands of the occupation are such that the efficiency of the taxicab operator is significantly affected by excessive hours of work. This, defendant maintains, endangers not only the operator but the general public, and the inclusion of taxi drivers within the ambit of the overtime provisions was to encourage the taxi industry to reduce this danger.
Constitutional challenges similar to those made by plaintiffs herein were rejected in Hotel Suburban System v. Holderman, supra, where the exemption of hotel employees from the Wage and Hour Law was attacked as discriminatory, and in N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295 (1957), where the constitutionality of a minimum wage standards order differentiating between hotel and other restaurants was questioned:
* * * Thus it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, or because of "some substantial consideration of public policy or convenience or the service of the general welfare." [at 300; citations omitted].
It is certainly true that the taxicab industry and the bus industry have a great deal in common. It is equally true that *96 there exist differences which would have induced the Legislature to treat them in different fashions.
Mass transportation has been a continual concern of legislatures, and has often been the object of special legislative treatment. This fact, when considered with the differences that do exist between the two occupations, in our view presents a reasonable ground for the different treatment in carrying out the objectives of the Wage and Hour Law. Plaintiffs have not shown that the classification used for the exception in question is arbitrary and unreasonable, and without relevance to the legislative goal. N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, supra.
Affirmed.
NOTES
[1] We note that on February 14, 1972, Assembly Bill 694 was introduced in the Legislature. This bill would exclude "employee[s] of a common carrier of passengers by taxicab" from the overtime provisions of the New Jersey Wage and Hour Law. This bill, recently released by the committee, after progressing to a second reading, was then recommitted. This proposed legislation tends to confirm the conclusion that the Wage and Hour Law, as it currently stands, contains no taxicab exemption.