NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1313-17T1

ELMER BRANCH, on behalf of
himself and all other similarly
situated persons,

    Plaintiff-Appellant,

v.

CREAM-O-LAND DAIRY,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 19, 2019**
>
> **APPELLATE DIVISION**

Argued March 11, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

Reargued May 13, 2019[1] – Decided June 19, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-4744-16.

Ravi Sattiraju argued the cause for appellant (The
Sattiraju Law Firm, PC, attorneys; Ravi Sattiraju, of

---

[1] The appeal was reargued to enable the Attorney General's participation. The Attorney General appeared at the second oral argument. Judge Sumners heard the first oral argument, but did not hear the second oral argument. The parties have consented to the addition of Judge Sumners to the panel without the need for further oral argument.

counsel and on the briefs; Anthony Santos Almeida, on the briefs).

Mark E. Tabakman argued the cause for respondent (Fox Rothschild LLP, attorneys; Mark E. Tabakman, of counsel and on the briefs; Ian Warren Siminoff, on the briefs).

Caroline G. Jones, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Caroline G. Jones, on the brief).

The opinion of the court was delivered by

MITTERHOFF, J.S.C. (temporarily assigned).

Plaintiff Elmer Branch and the putative class of similarly situated truck drivers appeal the trial court's grant of summary judgment in favor of defendant Cream-O-Land Dairy ("COL") and dismissal of their class-action complaint alleging a failure to pay overtime wages in violation of the New Jersey Wage and Hour Law ("WHL"), N.J.S.A. 34:11-56a to -56a38. The trial court determined that defendant was entitled to the WHL's good-faith defense, N.J.S.A. 34:11-56a25.2, based on its reliance on three determinations made by the New Jersey Department of Labor and Workforce Development ("DOL") officials in response to complaints brought by individual employees.

Having reviewed the contentions advanced on appeal in light of the applicable legal principles, we hold that such discrete determinations by DOL

officials, which are subject to further administrative appeal, do not constitute an "administrative practice or enforcement policy" and are insufficient to invoke the good-faith defense. N.J.S.A. 34:11-56a25.2. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

I.

A.

On November 29, 2016, plaintiff filed a putative class action complaint in the Law Division against COL. The class is defined to include: "All individuals that performed truck driving functions in the State of New Jersey for [d]efendant[] from 2014 to present." Plaintiff alleged that the class members worked approximately sixty to eighty hours per week without being paid one-and-one-half times their hourly rates for hours worked in excess of forty hours per week in violation of the WHL. See N.J.S.A. 34:11-56a4(b)(1).

Defendant answered the complaint, denying the allegations and asserting, among other defenses, the statutory good-faith defense. See N.J.S.A. 34:11-56a25.2. After the parties exchanged some written discovery, on August 4, 2017, defendant moved for summary judgment on the grounds that it was immunized from liability under the good-faith defense. At the time of the motion, the discovery end date was scheduled to elapse on November

16, 2017, and the discovery end date had not been previously extended. In support of its entitlement to the good-faith defense, defendant cited to three determinations made by DOL officials in response to employee complaints involving COL.

First, John Callahan, a hearing and review officer in the DOL's Division of Wage and Hour Compliance, issued a handwritten investigation report dated July 27, 2007. The report stemmed from a complaint by a truck driver employed by COL alleging a failure to pay appropriate overtime wages. After "a full field investigation and internal review," the DOL initially assessed a penalty of $40,000 for failure to pay overtime wages. Following an administrative appeal by COL, however, Callahan conducted an informal settlement conference with COL. As a result of the conference, Callahan issued his report and overturned the penalty. The report determined that COL was considered a "trucking industry employer" and was required only to pay its drivers one-and-one-half times the state minimum wage for overtime hours. See N.J.S.A. 34:11-56a4(f). The report concluded that COL was meeting this requirement.

Second, in June 2014, counsel for COL emailed Santiago Zayas, then a senior investigator for the DOL, asking if any follow-up was needed from COL regarding an investigation of an employee's overtime complaint. Zayas replied

via email, stating in full: "It's been determined that [COL] falls under the Federal Trucking guidelines of overtime exemption. The claimant was briefed of our finding, and referred to the [United States Department of Labor] for questions and concerns."

Third, in April 2017, COL's counsel emailed David Schraeger, then section chief of the Division of Wage and Hour Compliance, inquiring about the status of a truck driver's overtime complaint. Schraeger replied via email, stating:

> The inspection report indicated that [COL] is considered a transportation company rather than a dairy. Since the complainant consistently made above 1 1/2 times minimum wage – currently $8.44 – which equals $12.66 – per hour, we did not find the company to be in violation of [the] law at this time. We have sent the complainant a letter advising him of his right to pursue his claim at a formal [w]age [c]ollection proceeding, but he has not replied. The complaint has to be a moving party in order for a [w]age [c]ollection proceeding to go forward. Failing to hear from him, we shall take no further action on this matter at this time.

Defendant also provided two certifications in support of its motion for summary judgment. Scott Stoner, the vice president of operations for COL, certified that COL has a fleet of over 200 trucks that "warehouse[] and convey[] . . . refrigerated and non-refrigerated products (including but not limited to milk, dairy, juice, and non-dairy products, mechanical plastic, and

baked products) from one place to another by highway[.]" Stoner emphasized: "The company does not manufacture or produce any products. It owns no dairy farms, and does not produce any of the products in delivers." Stoner noted that there are products affixed with the COL label, but "that is done for branding/logistical purposes, and/or at customer request."

Michael P. McCarthy, an employee of the DOL for thirty-seven years and the former Director of the Division of Wage and Hour Compliance, certified as to the qualifications of the individuals involved in the DOL's three previous investigations of COL. He certified that "COL has justifiably and in good faith, relied upon the results of these three (3) investigations as contemplated by N.J.S.A. 34:11-56a25.2."

Plaintiff opposed the motion for summary judgment, primarily contending that the three informal determinations relied on by COL were insufficient to entitle it to the good-faith defense. Plaintiff also argued that defendant's motion was premature because discovery was outstanding and requested the opportunity to depose Stoner and McCarthy regarding the veracity of their certifications. On September 7, 2017, following oral argument, the trial court granted summary judgment in favor of COL and dismissed the complaint with prejudice based on the good-faith defense. The trial court reasoned that the three investigations and determinations by the

DOL were adequate to establish an "enforcement policy" with respect to COL's industry, thereby entitling COL to the good-faith defense. The trial court did "not make any substantive determinations regarding defendant's status as a trucking industry employer . . . [because] it need not for purposes of determining that the good-faith defense applies."

Plaintiff moved for reconsideration, asserting that the class members were entitled to "trucking industry overtime" at the rate of one-and-one-half times the minimum wage even if the good-faith defense barred the claim for regular overtime. See N.J.S.A. 34:11-56a4(f). On October 27, 2017, following oral argument, the trial court denied reconsideration. It reasoned that the class members were entitled to one-and-one-half times the minimum wage for each hour worked and that COL met this requirement by compensating plaintiff with a flat rate of $180 per day.

B.

Plaintiff appealed from the trial court's orders granting summary judgment and denying reconsideration. On March 11, 2019, we held oral argument in this appeal. Following oral argument, defendant filed a motion to supplement the record with a June 19, 2006 opinion letter from McCarthy, who at that time was the Director of the Division of Wage and Hour Compliance. Plaintiff opposed the motion.

The 2006 opinion letter was sent by McCarthy to an attorney in response to a "fax inquiry on the acceptable method of computation for 'day rate employees' in the trucking industry." The letter does not reference any employer, nor does defendant certify that the letter was provided in response to an inquiry by COL. The letter generally sets forth the formulas used by the Division of Wage and Hour Compliance to determine compliance with the WHL for non-exempt employees and trucking industry employees. The letter also provides a brief history of the trucking industry employer overtime requirements in New Jersey.

On March 26, 2019, we granted defendant's motion to supplement the record and indicated that "[t]he supplemental materials will be considered by the court to the extent it may find them relevant." We also invited the Attorney General to participate as amicus curiae with respect to the State's interpretation of the good-faith defense. The Attorney General accepted the invitation and filed a letter brief on April 26, 2019. The parties each responded to the Attorney General's brief on May 6, 2019. On May 13, 2019, we again held oral argument with the Attorney General appearing as amicus.

II.

A.

On appeal, plaintiff raises the following points for our review:

8

POINT I: THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANT COL COULD AVAIL ITSELF OF THE [WHL]'S "GOOD FAITH" DEFENSE IN THIS ACTION.

    A. The [WHL] Is a Remedial and Humanitarian Legislation That Must Be Construed Liberally to Effectuate Its Purpose of Prohibiting Employers From Evading Their Obligations.

    B. Defendant COL's Purported "Proofs" Do Not Establish Applicability of the [WHL]'s "Good Faith" Defense As a Matter of Law.

    C. The Trial Court Erred In Relying Upon State v. Frech Rather than Keely v. Loomis.

    D. Guidance From the Federal Courts Construing the [Fair Labor Standards Act]'s "Good Faith" Defense Supports Plaintiff's Position That Defendant COL Should Not Be Able to Avail Itself of the [WHL]'s "Good Faith" Defense.

POINT II: THE TRIAL COURT SHOULD HAVE ALLOWED PLAINTIFF THE OPPORTUNTIY TO DEPOSE MESSRS. STONER AND McCARTHY PRIOR TO ENTERING SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT.

POINT III: EVEN IF THE [WHL]'S "GOOD FAITH" DEFENSE APPLIES, THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S COMPLAINT IN TOTO BECAUSE PLAINTIFF WOULD STILL HAVE A VIABLE CLAIM FOR UNPAID "TRUCKING INDUSTRY OVERTIME."

In addition, plaintiff argues that defendant is not entitled to the good-faith defense based on the 2006 opinion letter because: (1) the letter was not

9

part of the summary judgment record; (2) there is no evidence in the record supporting that COL actually relied on the letter; and (3) the trial court's ruling on the good-faith defense did not involve a determination of the actual compensation paid by COL to plaintiff and the putative class of truck drivers during the relevant time period. For these reasons, plaintiff maintains that the 2006 opinion letter is irrelevant to the issues on appeal.

Defendant contends that the three previous DOL determinations constitute an enforcement policy upon which it reasonably relied and are sufficient to invoke the good-faith defense. Defendant similarly argues that the 2006 opinion letter represents the DOL's enforcement policy. Defendant also argues that federal case law interpreting the good-faith defense under the Fair Labor Standards Act ("FLSA")[2] supports its entitlement to the good-faith defense. Finally, defendant maintains: (1) no additional discovery would affect its entitlement to the good-faith defense; and (2) the good-faith defense is absolute, obviating the need to address whether COL met the definition of a trucking industry employer and paid its truck drivers one-and-one-half times the minimum wage for hours worked over forty.

The Attorney General argues that the three initial determinations relied on by COL do not meet the requirements for establishing the good-faith

_____

[2] Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 to 219.

defense. The Attorney General notes that the three initial determinations arose from the early stages of the Division of Wage and Hour Compliance's investigations into discrete matters and were subject to further administrative appeal or the employee brining a wage collection proceeding. As such, the Attorney General contends, the three initial determinations "are not high-level final determinations that carry the imprimatur of the agency head, as is required to establish the good-faith defense." The Attorney General maintains that in terms of the DOL's enforcement investigations, only the Commissioner's final decisions rendered after an OAL hearing are sufficient to invoke the good-faith defense. The Attorney General argues that even taken together, the three initial determinations do not constitute an "administrative practice or enforcement policy . . . with respect to the class of employers which he belonged[,]" N.J.S.A. 34:11-56a25.2, because the determinations clearly were not intended to "apply uniformly or automatically to a particular industry; they were discrete communications by subordinate members of the department regarding investigations based on information received from the employer."

On the other hand, the Attorney General argues that the 2006 opinion letter would be sufficient to invoke the good-faith defense because it "broadly discussed the Division's policy and interpretation of the law as a whole . . . and

described the means by which the [DOL] determined compliance with the WHL." The Attorney General contends that "[o]n its face, the letter reflects an interpretation of the law that applies to an entire class of employers or employees." Although the Attorney General notes that the 2006 opinion letter offers the DOL's interpretation of the WHL at the time it was issued, the Attorney General declines to take a position on whether the 2006 opinion letter reflects the DOL's current interpretations and policies. The Attorney General also declines "to take a position on whether defendant[] can demonstrate that [it is] a 'trucking industry employer' or [is] currently in compliance with the WHL with respect to the plaintiffs or any other employee."

B.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). The court considers whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see R. 4:46-2(c).

Although Rule 4:46-1 permits a party to move for summary judgment before the close of discovery, "[g]enerally, summary judgment is inappropriate

prior to the completion of discovery." <u>Wellington v. Estate of Wellington</u>, 359 N.J. Super. 484, 496 (App. Div. 2003) (citing <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 N.J. 189, 193 (1988)).  A party opposing a motion for summary judgment on the grounds that discovery is incomplete, however, must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." <u>Badiali v. New Jersey Mfrs. Ins. Grp.</u>, 220 N.J. 544, 555 (2015) (quoting <u>Wellington</u>, 359 N.J. Super. at 496); <u>see also</u> <u>Trinity Church v. Lawson-Bell</u>, 394 N.J. Super. 159, 166 (App. Div. 2007).

We review the denial of a motion for reconsideration for an abuse of discretion.  <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 389 (App. Div. 1996). Reconsideration should be granted only where "either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[.]"  <u>Id.</u> at 384 (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Whether defendant is entitled to the GFD turns on the statutory interpretation of the WHL.  We review issues of statutory construction de novo.  <u>Cashin v. Bello</u>, 223 N.J. 328, 335 (2015).

III.

A.

In addressing the issues presented by this appeal, we adhere to well-established principles of statutory interpretation. "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). In considering the statutory language, "an appellate court must read words 'with[in] their context' and give them 'their generally accepted meaning.'" Cashin, 223 N.J. at 335 (alteration in original) (quoting N.J.S.A. 1:1-1); see also DiProspero, 183 N.J. at 492 ("We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." (citations omitted)).

When a statute's plain language lends to only one interpretation, a court should not consider "extrinsic interpretative aids." DiProspero, 183 N.J. at 492 (quoting Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004)). "On the other hand, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'"

<u>Id.</u> at 492-93 (quoting <u>Cherry Hill Manor Assocs. v. Faugno</u>, 182 N.J. 64, 75 (2004)).

In addition, although we are not ultimately bound by an agency's statutory interpretation, "[g]enerally, courts afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing." <u>Univ. Cottage Club of Princeton New Jersey Corp. v. New Jersey Dep't of Envtl. Prot.</u>, 191 N.J. 38, 48 (2007); <u>see also</u> <u>Merin v. Maglaki</u>, 126 N.J. 430, 436-37 (1992) ("We give substantial deference to the interpretation of the agency charged with enforcing an act. The agency's interpretation will prevail provided it is not plainly unreasonable."). Pursuant to the WHL, the DOL established the Division of Wage and Hour Compliance to administer and enforce the WHL. <u>See</u> N.J.S.A. 34:11-56a2; N.J.A.C. 12:56-1.1; N.J.A.C. 12:56-2.1.[3] Accordingly, although we are not bound by the Attorney General's interpretation of the WHL, "it is nonetheless entitled to a degree of deference, in recognition of the Attorney General's special role as the sole legal adviser to most agencies of State Government," including the DOL. <u>Quarto v. Adams</u>,

_____

[3] The statute refers to the "Wage and Hour Bureau," <u>see, e.g.</u>, N.J.S.A. 34:11-56a2; N.J.S.A. 34:11-56a25.2, but the DOL's regulations currently designate that division as the "Division of Wage and Hour Compliance." N.J.A.C. 12:56-2.1 ("'Division of Wage and Hour Compliance' means Division of Wage and Hour Compliance of Labor Standards and Safety Enforcement of the New Jersey State Department of Labor and Workforce Development[.]").

395 N.J. Super. 502, 513 (App. Div. 2007) (citing N.J.S.A. 52:17A-4(e)); see also Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 70 (1978); Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist. v. Bd. of Educ. of Delran, 361 N.J. Super. 488, 493-94 (App. Div. 2003).

B.

We begin our analysis with the legislative purpose of the WHL. "The WHL is designed to 'protect employees from unfair wages and excessive hours.'" Hargrove v. Sleepy's, LLC, 220 N.J. 289, 304 (2015) (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)). To further this goal, "[t]he WHL establishes not only a minimum wage but also an overtime rate for each hour of work in excess of forty hours in any week for certain employees." Ibid. (citing N.J.S.A. 34:11-56a4). "The remedial purpose of the [WHL] dictates that it should be given a liberal construction." New Jersey Dep't of Labor v. Pepsi-Cola Co., 170 N.J. 59, 62 (2001); see also Hargrove, 220 N.J. at 304 ("The [WHL] should be construed liberally to effectuate its purpose.").

The WHL's remedial purposes also dictates "that all exemptions to N.J.S.A. 34:11-56a4 should be construed narrowly[.]" Marx v. Friendly Ice Cream Corp., 380 N.J. Super. 302, 310 (App. Div. 2005); see also Raymour & Flanigan, 405 N.J. Super. at 376 ("Given the humanitarian purpose of the

[WHL] we construe the [trucking industry employer] exemption narrowly, not broadly."); <u>Yellow Cab Co. of Camden v. State Through Dir. of Wage & Hour Bureau</u>, 126 N.J. Super. 81, 86 (App. Div. 1973) ("The humanitarian and remedial nature of [the WHL] requires that any exemption therefrom be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of the Legislature.").[4]

Turning to the relevant statutory text, N.J.S.A. 34:11-56a25.2 sets forth the good-faith defense:

> In any action or proceeding commenced prior to or on or after the date of the enactment of this act based on any act or omission prior to or on or after the date of the enactment of this act, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under this act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation by the Commissioner of the [DOL] or the Director of the Wage and Hour Bureau, or any administrative practice or enforcement policy of such department or bureau with respect to the class

---

[4] Defendant contends that we are not required to narrowly construe the good-faith defense because it is not an "actual overtime exemption" such as the executive exemption or the administrative exemption. We find this argument unavailing. Because the good-faith defense provides a total bar on liability for violations of the WHL, it clearly operates as an exemption to the WHL's requirements. <u>See</u> <u>Black's Law Dictionary</u> 653 (9th ed. 2014) (defining "exemption" as "[f]reedom from a duty, liability, or other requirement; an exception.").

of employers to which he belonged. Such a defense, if established, shall be a complete bar to the action or proceeding, notwithstanding, that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

In construing this provision's plain language in accordance with the legislative purpose of the WHL, it is useful to consider the administrative structure by which the DOL enforces the WHL. Under the WHL, the Commissioner of the DOL, the Director of the Division of Wage and Hour Compliance, and their authorized representatives have the authority to investigate potential wage and hour violations by collecting and inspecting relevant information from employers. See N.J.S.A. 34:11-56a6. The DOL may initiate an investigation into possible wage and hour violations from either an employee's complaint or from the DOL's own audit. See N.J.S.A. 34:11-56a25.1. At the conclusion of an investigation, the Division of Wage and Hour Compliance makes a determination as to whether the employer has violated the WHL, and if so, whether to assess wages, penalties, or fees. N.J.A.C. 12:56-1.2 to -1.4.

Within fifteen days of receiving an assessment letter from the Division of Wage and Hour Compliance, an employer may request a formal hearing. N.J.S.A. 34:11-56a22; N.J.A.C. 12:56-1.3(b). When an employer requests a

18

formal hearing, the Division of Wage and Hour Compliance considers whether the matter could be resolved at an informal settlement conference. N.J.A.C 12:56-1.6(c).[5] If no settlement conference is held or no resolution is reached at the conference, the Division transmits the matter to Office of Administrative Law ("OAL"). Ibid. In accordance with the procedures of the Administrative Procedures Act, a full record is developed and the Commissioner of the DOL renders a final agency decision. N.J.S.A. 34:11-56a22; N.J.A.C. 12:56-1.6(d). The Commissioner's final agency decision is appealable to the Appellate Division. N.J.A.C. 12:56-1.6(e).

The employee is not a party to an enforcement action at any stage, including in the OAL. If the Division of Wage and Hour Compliance declines to pursue an enforcement action, it may refer the employee to the DOL's Wage Collection Division to pursue the complaint before a Wage Collection Referee within the DOL. See N.J.S.A. 34:11-58; N.J.S.A. 34:11-59; N.J.A.C. 12:61-1.3. An employee may appeal a decision of a Wage Collection Referee to the

---

[5] The Attorney General notes that a hearing officer will conduct the informal settlement conference, that employees do not participate in conference, and that the employer may provide additional information or clarification of the circumstances giving rise to the assessment at the conference. The hearing officer may close the case if a settlement is reached or if the Division of Wage and Hour Compliance decides to take no further action based on the information provided.

Law Division and receive de novo review.  See Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 116 (2007) (citing N.J.S.A. 34:11-63).

C.

"New Jersey case law is virtually nonexistent on the requirements of that state's good-faith defense to a failure to pay statutory overtime rates[.]" Keeley v. Loomis Fargo & Co., 183 F.3d 257, 271 (3d Cir. 1999).  Indeed, no published appellate opinions address the application of the good-faith defense or interpret N.J.S.A. 34:11-56a25.2.[6]  In finding that defendant was entitled to the good-faith defense, the trial court relied on the Law Division's decision in State v. Frech Funeral Home, 185 N.J. Super. 385 (Law Div. 1982).  Plaintiff argues that the trial court should have rejected the reasoning of Frech and instead relied on the Third Circuit Court of Appeal's reasoning in Keeley.

Frech addressed whether a mortician's trainee should be exempted from the WHL's requirements based on employment in a "bona fide professional

_____

[6]  In the absence of precedential New Jersey cases, both parties invoke federal precedent interpreting the FLSA's good-faith defense.  See 29 U.S.C. § 259.  Because we focus on the plain language and the legislative purpose of the WHL, we find it unnecessary to rely on the federal precedent cited by the parties.  Moreover, although 29 U.S.C. § 259 contains largely identical language to N.J.S.A. 34:11-56a25.2, the United States Department of Labor has also enacted regulations addressing the good-faith defense under the FLSA.  See 29 C.F.R. §§ 790.13 to 790.19.  The New Jersey DOL has not promulgated analogous regulations under the WHL.

A-1313-17T1

capacity."  185 N.J. Super at 387.[7]  The court determined that the defendant was entitled to the good-faith defense based on its reliance on the regulations defining "professional" under the WHL and the statute and regulations addressing the practice of mortuary science.  See id. at 393-97.  In so holding, the court reasoned that a "defendant need not be correct in its belief that its employees work in a bona fide professional capacity.  [The defendant] need only plead and prove that in good faith it reasonably believes that to be the fact."  Id. at 397.  In the instant matter, because defendant is not relying on the DOL's regulations to support the application of the good-faith defense, we find that Frech provides little persuasive authority.

In Keeley, the Third Circuit called into doubt the reasoning in Frech because it "appeared to ignore the requirement that good faith be based on a written regulations, order, etc." 183 F.3d at 269.  The Third Circuit addressed whether an employer was entitled to the good-faith defense based on its reliance on an industry-wide practice of not paying overtime wages to truck drivers.  Id. at 269-73.[8]  The Third Circuit remanded for reconsideration of

---

[7]  The defendant funeral home was charged in municipal court for failing to pay overtime wages as required by N.J.S.A. 34:11-56a4.

[8]  In 1996, the DOL enacted a regulation that established trucking industry overtime at one-and-one-half times the minimum wage.  Id. at. 262.  The Third Circuit struck down the regulation because the Commissioner exceeded his
(continued)

whether the employer was entitled to the good-faith defense.  Id. at 272.  The court reasoned that "New Jersey's good-faith defense is clearly unavailable when an employer is not relying on one of the enumerated sources in the statute, such as a regulation, practice, or policy of the state labor agency[,]" and that "good faith is absent when the employer fails to investigate a law's requirements, or simply relies on a longstanding practice (of either the employer itself or its industry) of failing to pay overtime or on union acquiescence in such failure."  Id. at 271.  We agree with the Third Circuit's well-reasoned analysis, but find that Keeley is not analogous to the instant matter because COL was not relying on a longstanding industry practice or union acquiescence in asserting the good-faith defense.

## D.

With this background regarding the WHL and the good-faith defense in mind, we turn to the questions presented in this appeal.  When considered in the context of WHL's enforcement structure, we agree with the Attorney General that in terms of the DOL's enforcement investigations, only either the

(continued)
statutory authority in enacting the regulation.  Id. at 268.  "In response to Keeley, the Legislature amended the Wage and Hour Law to include the trucking industry employer exemption" as currently codified in N.J.S.A. 34:11-56a4(f).  Raymour & Flanigan, 405 N.J. Super. at 378 (citing L. 1999, c. 370).

22

Commissioner's final agency decision rendered after an OAL hearing or a Wage Collection Referee's final decision qualifies as a "written administrative regulation, order, ruling, approval or interpretation by the Commissioner of the [Department of Labor and Workforce Development] or the Director of the Wage and Hour Bureau[.]" N.J.S.A. 34:11-56a25.2. This interpretation is consistent with both the plain language of N.J.S.A. 34:11-56a25.2 and the enforcement structure of the WHL. Accordingly, the three initial determinations relied on by defendant do not serve as a basis for the good-faith defense under this portion of N.J.S.A. 34:11-56a25.2.

The second portion of N.J.S.A. 34:11-56a25.2, that an employer relied on "any administrative practice or enforcement policy of such department or bureau with respect to the class of employers to which he belonged," is more distinctly at issue in this appeal. We read this statutory language sensibly alongside the first portion of N.J.S.A. 34:11-56a25.2 and the WHL's enforcement provisions. See DiProspero, 183 N.J. at 492. We also construe this language narrowly as an exception to the WHL's requirements. See Marx, 380 N.J. Super. at 310.

Applying these principles of statutory construction, we agree with plaintiff and Attorney General that the three initial determinations do not constitute an "administrative practice or enforcement policy" because they do

not carry the imprimatur of the agency head. The three initial determinations addressed discrete complaints by individual employees based on information received from the employer. They were not espousing a general policy that applied broadly to a class of employers. Furthermore, the determinations by lower-level representatives of the DOL were subject to further administrative appeal and thus are not comparable to the final agency decisions that would suffice under the first portion of N.J.S.A. 34:11-56a25.2. Most importantly, to the extent the second portion of the exception may be susceptible to more than one interpretation, the exception must be construed narrowly in light of the remedial purpose of the WHL. See Marx, 380 N.J. Super. at 310; Raymour & Flanigan, 405 N.J. Super. at 376; Yellow Cab, 126 N.J. Super. at 86. Finally, we accord deference to the Attorney General's interpretation of this provision of the WHL. See Univ. Cottage Club, 191 N.J. at 48; Quarto, 395 N.J. Super. at 513.

For all of these reasons, we hold that discrete determinations or communications by DOL officials regarding complaints by individual employees, which are subject to further administrative appeal, do not constitute an "administrative practice or enforcement policy" and are

insufficient to invoke the good-faith defense. N.J.S.A. 34:11-56a25.2.[9] Accordingly, the trial court improvidently granted summary judgment to defendant based on its reliance on the three previous DOL determinations.

Turning to the 2006 opinion letter, we find that the letter constitutes an "administrative practice or enforcement policy" sufficient to support a good-faith defense. N.J.S.A. 34:11-56a25.2. In general, agencies offer this sort of informal guidance through means such as opinion letters, bulletins, and internal memoranda. See Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 136-37 (2001) ("Although not easily defined, informal agency action is any determination that is taken without a trial-type hearing, including investigating, publicizing, negotiating, settling, advising, planning, and supervising a regulated industry."). Courts give deference to agencies' informal interpretations. See Estate of F.K. v. Div. Of Med. Assistance And Health Servs., 374 N.J. Super. 126, 141 (App. Div. 2005) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

The 2006 opinion letter constitutes such informal guidance and expresses the Division of Wage and Hour Compliance's interpretation of the

---

[9] Although we reach our conclusion based on the plain language of N.J.S.A. 34:11-56a25.2, we also note that the WHL's legislative history does not contain any amendments or comments regarding the good-faith defense. See L. 1967, c. 216, § 2.

appropriate methods to calculate overtime wages for both non-exempt employees and trucking industry employees. In other words, the letter distinctly represents the Division's "administrative practice or enforcement policy . . . with respect to [a] class of employers." N.J.S.A. 34:11-56a25.2. Based on the plain language of the statute, and giving deference to the Attorney General's interpretation of the WHL, see Univ. Cottage Club, 191 N.J. at 48, we hold that the second portion of the good-faith exception refers to informal agency guidance expressing the interpretation of the DOL or the Division Wage and Hour Compliance, not to determinations by lower-level representative regarding individual cases that are subject to further administrative appeal. Accordingly, we find that the 2006 opinion letter could qualify as an "administrative practice or enforcement policy" sufficient to support a good-faith defense. N.J.S.A. 34:11-56a25.2.

Turning to the facts of this case, however, we find that defendant is not entitled to the good-faith defense based on the 2006 opinion letter. The good-faith defense applies only when an employer "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on [a qualifying source]." N.J.S.A. 34:11-56a25.2 (emphasis added). "When an affirmative defense is raised [in a civil case], the defendant normally has the burden of proving it." Roberts v. Rich Foods, Inc., 139 N.J. 365, 378

26

(1995) (alteration in original) (quoting Biunno, <u>Current N.J. Rules of Evidence</u>, cmt. 2 on N.J.R.E. 101(b)(1) (1994-95)); <u>see also</u> <u>Keeley</u>, 183 F.3d at 272 n. 12 ("We note that the burden to plead and prove good faith is on the defendant."). In this case, defendant presented no evidence in support of its motion for summary judgment that it relied on the 2006 opinion letter in determining the appropriate compensation for its employees. <u>See</u> <u>Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 378 n. 3 (2010) ("In respect of a summary judgment motion, an appellate court is bound by the summary judgment factual record developed before the trial court and applies to that record the governing legal standards."). Because defendant failed to establish such reliance, it may not avail itself of the good-faith defense based on the 2006 opinion letter.

Moreover, unlike the three initial documents, the 2006 opinion letter does not specifically address COL or determine that COL meets the statutory definition of a "trucking industry employer." N.J.S.A. 34:11-56a4(f). Because defendant did not present proofs that it was a trucking industry employer and had paid its employees in accordance with the formula for trucking industry overtime set forth in the letter, the letter is insufficient to support the good-faith defense on the facts of this case.

In this regard, the trial court made clear that "whether or not [defendant] is a trucking industry [employer] is clearly a question of fact. But that's not the issue for today." Similarly, based on its ruling on the good-faith defense, the trial court also did not make findings on the actual hourly compensation plaintiff received during the relevant time period.[10]

The WHL defines "trucking industry employer" as

> any business or establishment primarily operating for the purpose of conveying property from one place to another by road or highway, including the storage and warehousing of goods and property. Such an employer shall also be subject to the jurisdiction of the Secretary of Transportation pursuant to the federal Motor Carrier Act, 49 U.S.C. [§] 31501 et seq., whose employees are exempt under section [§] 213(b)(1) of the federal "Fair Labor Standards Act of 1938," 29 U.S.C. [§] 213(b)(1), which provides an exemption to employees regulated by section 207 of the federal "Fair Labor Standards Act of 1938," 29 U.S.C. [§] 207, and the Interstate Commerce Act, 49 U.S.C. [§] 501 et al.
>
> [N.J.S.A. 34:11-56a4(f).]

Based on the legislative purpose of the WHL and the legislative history of the trucking industry employer exception, we noted that the exception "was

---

[10] During oral argument on the summary judgment motion, defendant's attorney acknowledged that the issue of plaintiff's actual compensation was not before the court. Likewise, in its appellate brief, defendant argues that "[t]he good-faith defense is absolute, obviating the need to address the underlying elements of a [trucking industry employer]."

directed at the trucking industry, not the retail industry." Raymour &
Flanigan, 405 N.J. Super. at 378. We held that "the term establishment as
used in N.J.S.A. 34:11-56a4 does not simply mean a separate location of one
branch of a complete business enterprise, but in fact refers to the business
itself, which must primarily operate to transport property by road from one
place to another." Id. at 385.

In opposition to defendant's motion for summary judgment, plaintiff
requested additional discovery to establish the defendant is not a trucking
industry employer. Plaintiff identifies information on defendant's website
suggesting that defendant may manufacture some of its products and is not
only in the business of conveying goods. On the other hand, defendant's vice
president of operations certified that COL does not manufacture or produce
any of its own products.

When viewing the evidence in the light most favorable to plaintiff, we
find that issues of fact exist as to whether defendant is a trucking industry
employer. There were roughly three months until the close of discovery when
defendant moved for summary judgment, and plaintiff had not yet deposed
defendant's vice president of operations. Moreover, it is clear that the parties
did not actually litigate this issue below.

29

In addition, even if defendant meets the definition of a trucking industry employer, defendant did not present sufficient proofs to establish that plaintiff received appropriate compensation. Plaintiff's complaint, filed in November 26, 2016, alleges that he worked for COL since September 15, 2015, but the record contains only plaintiff's earning statements for January and February 2017. These records reflect that plaintiff was credited with eight hours of days for each day he worked, that plaintiff only punched in when he arrived to work but did not punch out at the end of his shift, and that plaintiff received a daily flat rate of $180 per day. When viewing this evidence in the light most favorable to plaintiff, we find that issues of material fact exist as to the exact hours that plaintiff worked and the exact compensation plaintiff received.

In light of these factual disputes, we remand for further discovery on whether defendant meets the statutory definition of a trucking industry employer and the actual hourly compensation plaintiff received. After determining whether defendant is a trucking industry employer, the trial court may determine whether plaintiff's actual compensation was sufficient to meet the regular overtime or trucking industry overtime requirements.[11]

---

[11] The parties dispute the appropriate formulas for calculating regular overtime and trucking industry overtime and whether the 2006 opinion letter sets forth the proper formulas. We leave it to the trial court to adjudicate these issues in the first instance.

### E.

In summary, we hold that the three initial determinations relied on by defendant are insufficient to support the good-faith defense and reverse the trial court's grant of summary judgment. Although we conclude the 2006 opinion letter represents "an administrative practice or enforcement policy," N.J.S.A. 34:11-56a25.2, defendant did not rely on this letter and therefore is not entitled to the good-faith defense on the facts of this case.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1313-17T1