**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2615-19
               A-2652-19

NATACHA SMITH,

      Plaintiff-Appellant,

v.

JOCELYNE VIECELI,

      Defendant-Respondent.

_____

JOCELYNE VIECELI,

      Plaintiff-Respondent,

v.

NATACHA SMITH,

      Defendant-Appellant.

_____

Submitted February 9, 2021 – Decided March 9, 2021

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division and Law Division, Hunterdon County, Docket Nos. C-014025-19 and LT-0246-19.

Lee B. Roth, attorney for appellant.

David A. Avedissian, attorney for respondent.

PER CURIAM

These back-to-back appeals, consolidated for purposes of this opinion, arise from plaintiff Natacha Smith's claim that she and defendant Jocelyne Vieceli had an enforceable oral agreement for the purchase of defendant's home, where plaintiff resided as a tenant.[1] After the court granted defendant's motion for summary judgment and dismissed the complaint, it also denied plaintiff's motion for reconsideration and vacated a lis pendens plaintiff filed against the property. Plaintiff also appeals from an order denying her request to extend a stay of a warrant for removal, claiming the court unreasonably removed her from the property while she was disputing whether the parties had a binding contract.

For the reasons that follow, we reverse and remand the court's order granting defendant summary judgment on plaintiff's oral contract claim and its order denying reconsideration at issue in A-2615-19. The court's summary judgment order was entered shortly after the court denied defendant's motion to

---

[1] For clarity, we refer to the parties as they are identified in A-2615-19.

dismiss under Rule 4:6-2(e), and before defendant responded to plaintiff's outstanding discovery. Even on the undeveloped record before the court, we are satisfied that genuine and material factual questions existed regarding the alleged oral agreement such that dismissal of plaintiff's complaint was unwarranted. We dismiss as moot plaintiff's challenge in A-2652-19 to the court's decision denying her request for a further stay of the warrant for removal.

## I.

We briefly summarize the facts adduced from the summary judgment record, viewing them in the light most favorable to plaintiff, the non-moving party. Brill v. Guardian Life Ins., 142 N.J. 520, 523 (1995). Defendant and her husband owned a home in Ringoes, where plaintiff was a long-term tenant. After defendant's husband died, she decided to sell the property. As noted, plaintiff contended the parties entered into a binding oral agreement for plaintiff to purchase the home, which defendant disputed. On September 20, 2019, plaintiff filed a verified complaint in the Chancery Division alleging breach of an oral agreement, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.

At some point after defendant's husband's death, defendant asked plaintiff if she was interested in purchasing the property. Plaintiff stated she wanted to

purchase the home and that she and defendant intended to finalize the deal in the fall of 2018, with the final price being the only outstanding term. Plaintiff also maintained that defendant and her husband had made previous general oral statements that they would one day sell her the property and acted consistent with those statements.

On April 24, 2019, defendant offered to sell plaintiff the property for $400,000. Plaintiff rejected the offer because she thought the property's value was closer to $240,000. Plaintiff then discovered through her realtor that defendant had listed the property for $300,000. Plaintiff was upset that defendant had listed the property, and for $100,000 less than the offer to her. On May 9, 2019, defendant's realtor made a "final offer" to plaintiff's realtor to sell the property for $295,000. Plaintiff agreed to the price and instructed her realtor to communicate her acceptance to defendant's realtor. Specifically, plaintiff "immediately communicated back that [she] accepted [defendant's] offer" and that "[n]o one said to [her] that [the parties] needed anything in writing to have an agreement."

Defendant's realtor agreed that "[defendant] countered [plaintiff's] offer and both parties ultimately agreed on $295,000 'as is.'" She also stated, however, that "[a]t no time did [she] ever believe that plaintiff and defendant had an

4

agreement for the sale of the property or a meeting of the minds under any terms."

Plaintiff's realtor sent a standard residential sales contract to defendant memorializing the sale price, signed by plaintiff. Despite executing a written contract, plaintiff stated she considered the written agreement "just a formality," and only signed it because her realtor stated that she "needed something written for the mortgage company." Defendant never signed the agreement.

Defendant's realtor sent plaintiff's realtor a text message on May 10, 2019, stating: "Contract has been emailed [to defendant] for signatures!" The contract also included an attorney-review clause which stated that the "[c]ontract will be legally binding at the end of this three-day period unless an attorney for [plaintiff] or [defendant] reviews and disapproves of the [c]ontract." In an email discussing the signed contract, plaintiff's realtor stated the parties "really need to get this to [an] attorney today." After plaintiff's realtor asked where the parties stood the following day, defendant's realtor texted her she "received another offer" and that plaintiff should "present her best offer."

Defendant's realtor actually received two other offers on the property. She accordingly asked the three offerors "to submit their best and final offer." Despite the alleged May 9, 2019 oral agreement, plaintiff submitted a final offer

of $300,000 "with an escalation clause of $1,001 not to exceed $315,000," which was ultimately the lowest offer. Plaintiff's realtor was later informed that the property had been sold to another party.

Defendant certified she never intended to sell the property without a fully executed written agreement. In support, she stated that she "continued to show the property after [plaintiff] submitted her verbal offer of $295,000 . . . ," which plaintiff was aware of because "the showings were coordinated with her as a resident." Defendant also confirmed that plaintiff's final offer of $315,000 was lower than two other offers she received.

On October 25, 2019, defendant moved to dismiss plaintiff's complaint for failure to state a claim under Rule 4:6-2(e), which the court denied in an October 28, 2019 order. In its accompanying written statement of reasons, the court found plaintiff had pled sufficient facts to establish claims for breach of an oral agreement, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and her entitlement to specific performance. The court noted that the facts "show that the parties had been discussing the purchase of the [p]roperty for several years, [plaintiff] had accepted a counteroffer provided by [defendant's] realtor, [defendant's] realtor acknowledged the acceptance, and then [defendant] rescinded the 'agreement' to accept another offer." The court

also stated that plaintiff "pled sufficient facts to demonstrate an oral agreement may have existed between her and [defendant]."

In November 2019, defendant moved for summary judgment which the court granted in a December 20, 2019 order. In its accompanying written decision, the court rejected plaintiff's claim that the parties entered into an oral agreement for the sale of defendant's property. The court found that although the parties agreed on the description of the property, the interest to be transferred, and the identity of the transferor and transferee by clear and convincing evidence, they did not agree on all essential terms and did not express a clear intent to be bound without a written agreement.

The court noted that the parties had never agreed upon a final sale price for the property, an essential term. In this regard, the court found that a purchase price was not discussed until April 24, 2019, and at that time plaintiff was "actively involved" in preparing the property for viewings by other prospective buyers. The court explained:

> The continued negotiations after the $295,000 price was agreed upon, the failure to remove the [p]roperty from being shown to prospective purchasers, and the realtor's active attempts to finalize a signed written agreement, counter [plaintiff's] assertion that an oral agreement was sufficient to bind [defendant] to sell the [p]roperty at $295,000. It is inconceivable that after increasing her offer from $295,000 to $305,000 and

7

then to $315,000 [plaintiff] can argue that there is an enforceable contract at $295,000. By making higher offers after $295,000 was "accepted," [plaintiff] clearly acknowledged that there was no deal at $295,000.

The court noted that "nothing in the realtors' exchanges support the bald assertion that a contract was solely needed for the mortgage company," and that "the extensive discussions between the realtors about finalizing a written contract confirm[ed] that the parties were not satisfied with an oral agreement."

The court further noted that had defendant signed the agreement, she could have canceled the contract during the three-day attorney review period. As the court explained, defendant would have had less protection under the alleged oral agreement than the written agreement plaintiff forwarded. The court also denied plaintiff's request for additional discovery because she did "not address what evidence could be gleaned from further discovery or why additional discovery [was] needed."

The court also rejected plaintiff's promissory estoppel claim because she continued to submit bids after she was made aware of higher offers. As a result, the court concluded that plaintiff "has not provided sufficient proof to demonstrate that [defendant] made the offer with the expectation that [plaintiff] would rely on it." With respect to plaintiff's breach of the implied covenant of good faith and fair dealing allegation, the court determined that because there

was no enforceable contract, the implied covenant does not apply as a matter of law. The court also denied plaintiff's subsequent motion for reconsideration in a February 20, 2020 written opinion.

Defendant was later informed that plaintiff filed a lis pendens against the property on October 7, 2019. On March 24, 2020, the court issued an order discharging the lis pendens because plaintiff had failed to provide proper notice to defendant pursuant to N.J.S.A. 2A:15-7, and plaintiff's challenge to the sale of the property had no probability of success on the merits.

Defendant sent plaintiff a notice to quit stating that because plaintiff's tenancy was scheduled to terminate and defendant was selling the property, she was required to leave the residence. After plaintiff failed to vacate, defendant filed an eviction action with the Special Civil Part (landlord-tenant court) on August 22, 2019.

The landlord-tenant court issued an order on September 23, 2019 that granted judgment of possession to defendant by consent of the parties and stayed the warrant for removal for fourteen days. In its accompanying oral decision, the landlord-tenant court explained that "by consent [defendant] will get a judgment for possession and the matter will be transferred to the Chancery Division and each party [will have] a right to present whatever documentation

they wish to provide . . . so that this matter can be heard rather quickly." The landlord-tenant court further stated that the warrant for removal would be stayed for fourteen days to allow the "parties to argue the complaint filed, or about to be filed, by [plaintiff] here in the Chancery Division."

Plaintiff's counsel noted that it was his understanding "that in . . . [fourteen] days, if we are able to assure everybody that our complaint was filed in Chancery then the stay continues until the Chancery Division deals with our case." The landlord-tenant court responded that "[i]f the complaint's filed, [the] warrant of removal will be stayed."

The court issued a warrant for removal on January 3, 2020, which was subsequently stayed until March 2, 2020 "to afford . . . [plaintiff] a reasonable opportunity to relocate to new dwelling accommodations." Plaintiff then filed an order to show cause seeking an extension of the warrant for removal while she appealed the court's summary judgment order.

On February 28, 2020, a different motion judge denied plaintiff's request to extend the stay of the warrant for removal. In its accompanying written decision, the court noted that its "jurisdiction [was] limited to enforcing the order of September 23, 2019 (entered into by the consent of the parties)." The court also determined that it was unable to grant a stay because plaintiff failed

to argue that there was an "unavailability of housing accommodations, which is a prerequisite to a court's granting of a hardship stay." In addition, the court stated that it could not "extend the stay for a period longer than [six] months" from the September 23, 2019 order.

In support of its position, the court relied on N.J.S.A. 2A:42-10.1[2] which provides:

> [T]he judge of the court having jurisdiction shall use sound discretion in the issuance of a warrant or writ for removal or writ of possession, and if it shall appear that by the issuance of the warrant or writ the tenant will suffer hardship because of the unavailability of other dwelling accommodations the judge may stay the issuance of the warrant or writ and cause the same to issue at such time as he shall deem proper under the circumstances, but in no case shall such judge stay the issuance of any such warrant or writ for possession for a longer period than [six] months after the date of entry of the judgment of possession.

The court also concluded that plaintiff failed to file a motion for orderly removal, and he would "not enter [such] an order." Moreover, the court noted that plaintiff's requested relief was for more than the seven days permitted by Rule 6:6-6(b). On March 5, 2020, we denied plaintiff's emergent application for

---

[2] N.J.S.A. 2A:42-10.1 applies to rent-controlled properties. Here, the court should have applied N.J.S.A. 2A:42-10.6, which contains near-identical language.

a stay of the warrant for removal pending appeal because she did not establish the need for emergent relief nor a likelihood of success on the merits under Crowe v. De Gioia, 90 N.J. 126, 133 (1982). This appeal followed.

In A-2615-19, plaintiff contends that: 1) the court erred in granting summary judgment to defendant as the parties entered an enforceable oral agreement; 2) modifications to an agreement do not change an agreement unless agreed to by both parties; 3) it is improper to grant summary judgment where discovery is outstanding and a party's "state of mind, intent, motive[,] or credibility" are in issue; 4) the use of realtors has no effect on the existence of an oral agreement; and 5) the court improperly dismissed her promissory estoppel, breach of the implied covenant of good faith and fair dealing, and partial performance claims. In A-2652-19, defendant argues that it was "unreasonable to remove a rent paying tenant from her property during the time she seeks to enforce her agreement to purchase the property itself," and we should address the issues on appeal, despite her eviction.

## II.

We have fully considered plaintiff arguments related to A-2615-19 and agree that the court improperly granted defendant's summary judgment application. Simply put, the determination of whether the parties intended to,

and did, enter a binding oral agreement under the present circumstances is a highly fact-sensitive exercise. We are satisfied from our de novo review of the record that genuine and material questions of fact existed in the motion record existed on that issue and plaintiff's remaining contract-related claims. We also conclude defendant's application was premature as she failed to respond to plaintiff's outstanding discovery requests and a more complete development of the facts was required before plaintiff's complaint was dismissed.

"Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)). The court must decide "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. Further, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." Ibid. On

13

appeal, we review de novo the grant or denial of a motion for summary judgment. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016).

"Generally, summary judgment is inappropriate prior to the completion of discovery." Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003). Before granting summary judgment, "[a] trial court 'should assure itself that the parties have had a reasonable opportunity to obtain and submit material information to the court.'" D.M. v. River Dell Reg'l High Sch., 373 N.J. Super. 639, 648 (App. Div. 2004) (quoting Ziegelheim v. Apollo, 128 N.J. 250, 264 (1992)).

Against this standard of review, we consider the applicable legal principles governing oral agreements for the purchase of real property. "A contract arises from [an] offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (citation omitted). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Ibid. In certain circumstances, the Statute of Frauds permits enforcement of an oral agreement for the sale of real property if "a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence

of the agreement and the identity of the transferor and the transferee are proved by clear and convincing evidence." N.J.S.A. 25:1-13(b).

"[T]he focus of inquiry in a situation involving an agreement for the sale of an interest in real estate . . . should be whether an agreement has been made between the parties by which they intend to be bound." Morton v. 4 Orchard Land Trust, 180 N.J. 118, 126 (2004) (quoting New Jersey Law Revision Commission, Report and Recommendations Relating to Writing Requirements for Real Estate Transactions, Brokerage Agreements and Suretyship Agreements 2, 10 (1991)).

"[A] 'high standard of proof' must be met to establish that intent. Specifically, 'the existence of an [oral] agreement between the parties as well as its essential terms must be proved by clear and convincing evidence.'" Ibid. Further, the parties must "manifest[] an intent to enter into an oral agreement," id. at 130, not just the written agreement. In determining whether parties intended to enter into a binding oral agreement, we evaluate: 1) the circumstances surrounding a transaction; 2) the nature of the transaction; 3) the relationship between the parties; 4) the parties' contemporaneous statements; and 5) the parties' prior dealings. Id. at 126.

We acknowledge, as did the court, that "[a] party opposing a motion for summary judgment on the grounds that discovery is incomplete . . . must 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 542 (App. Div. 2019) (quoting Badiali v. New Jersey Mfrs. Ins., 220 N.J. 544, 555, (2015)).  In our view, the non-movant's obligation in this regard must be evaluated in the context of the procedural posture of the case.

Here, the court dismissed plaintiff's complaint a mere three months after plaintiff filed the complaint, with discovery literally in its infancy.  Indeed, after the court denied defendant's motion to dismiss on October 28, 2019, approximately a week later, defendant filed her answer and motion for summary judgment.  Plaintiff promptly served interrogatories on November 15, 2019, less than ten days after receiving defendant's answer.  Oral argument on defendant's summary judgment motion was held approximately one month later, on December 20, 2019, when the court issued an order and statement of reasons dismissing the complaint.  When the parties appeared for oral argument, defendant's responses to plaintiff's interrogatories were not even due, see Rule

4:17-4(b), and the record does not reflect defendant ever responded to the outstanding discovery.

Plaintiff opposed defendant's motion in part by stressing that discovery was still outstanding, and the record was comprised of documentary materials produced by defendant without any opportunity to conduct depositions. In this regard, plaintiff's counsel stated at oral argument that "interrogatories have been served" and "depending on . . . the answers, [they] may well need depositions." Further, the court also recognized in its statement of reasons accompanying the December 20, 2019 order that plaintiff also stated the outstanding discovery was necessary to "reveal why [defendant] decided to list the price and pay a commission instead of selling the [p]roperty to [plaintiff]." Plaintiff also stresses in her merits brief that whether defendant "contemplated a written agreement . . . can only be explored through discovery that was not allowed." Under these circumstances, where plaintiff received no sworn responses to duly served discovery, she should not be criticized for her inability to identify the need more precisely for the outstanding and additional discovery.

Apart from the premature nature of defendant's motion, we also agree that the court improperly weighed the evidence and resolved disputed issues of material fact against plaintiff, the non-movant, contrary to Brill. First, with

17                                                          A-2615-19

respect to the oral agreement's essential terms, the court acknowledged that the property, the nature of the interest to be transferred, and the "identities of the alleged transferor and transferee" were clearly and convincingly established. As to price, plaintiff certified she understood that "[o]nce [they] had the price of $295,000 . . . [she] had [her] property." In her certification, defendant's realtor certified that she "countered [plaintiff]'s offer and both parties ultimately agreed on $295,000 'as is.'"

Faced with that apparent concession, defendant pivoted and maintained that plaintiff's conduct after the parties agreed on the $295,000 purchase price confirmed that plaintiff did not intend to be bound by an oral agreement. There is no question that there was significant evidence supporting that view, which the court accepted. Indeed, as the court pointed out, plaintiff's broker forwarded a signed contract and plaintiff later increased her offer on the property multiple times with full knowledge that the property was still listed, and that other parties filed competing offers.

Plaintiff, however, specifically addressed these issues when she certified that no one had informed her that she "needed anything in writing to have an agreement" and that "[n]o one said they contemplated or required anything in writing to make the deal." Plaintiff also stated that "[b]ecause of [her] long-

18

term relationship with [her] landlords, the sellers, [she] thought an agreement was an agreement and it did not have to be in writing." Her broker corroborated plaintiff's statements when she similarly certified that "signing was just a formality to satisfy the mortgage company."

With respect to plaintiff's increased offers, the court concluded such actions were "inconceivable" with the notion that the parties had a binding oral agreement at $295,000. Plaintiff, however, explained her conduct by certifying that she "took the advice of [plaintiff's realtor] and offered more money in an effort to settle the issue at the least cost for both [her] landlord and [herself]." Plaintiff stated she "did not want to risk losing the property."

Further, the court did not address fully the circumstances surrounding the transaction, the parties' relationship, and their prior dealings. Morton, 180 N.J. at 126. As plaintiff certified, her tenancy commenced with a formal lease agreement but when that agreement lapsed, defendant permitted her to live at the property for over eight years based on a series of oral agreements. Indeed, she noted that a "written lease was no longer needed. [The parties] were too close to need a writing." Moreover, plaintiff noted that she had a "family-type" relationship with defendant and that it had always been the plan for plaintiff to purchase the property.

19

In sum, we conclude it was error for the court to grant summary judgment when defendant had yet responded to plaintiff's timely discovery requests in a case that was a mere three months old. We also conclude there were genuine and material factual questions with respect to the terms of the parties' alleged oral agreement and whether they required a written agreement to consummate the sale of the property. Viewing these facts in the light most favorable to plaintiff, a fact finder could reasonably conclude that the parties had agreed to be bound by an oral contract for the sale of the property for a $295,000 purchase price "as is." We reach a similar conclusion with respect to plaintiff's attendant claims sounding in breach of the duty of good faith and fair dealing, promissory estoppel and partial performance, as the court's decision dismissing those claims was based primarily on the absence of a binding oral agreement.

Accordingly, the summary judgment and reconsideration orders under review are reversed and the matter is remanded to the trial court. Nothing in our opinion should be construed as suggesting our view on the outcome of the remanded proceedings.

III.

We next address plaintiff's claim in A-2652-19 that the court's refusal to extend the warrant for removal throughout her appeal was an abuse of discretion.

20

Because plaintiff has vacated the residence and the property has been sold, we dismiss the appeal as moot, but provide the following brief comments.

First, we conclude that plaintiff's claim is not justiciable. Ordinarily, we will dismiss as moot an appeal challenging an eviction where the tenant has been removed or vacated the premises, and the residence has been re-rented. See Daoud v. Mohammad, 402 N.J. Super. 57, 61 (App. Div. 2008) ("Because the court's jurisdiction is limited to determining the issue of the landlord's right to possession of the premises, and . . . the tenant vacated the premises and the premises have been re-rented, the issue can no longer be determined."); Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005) ("Ordinarily, where a tenant no longer resides in the property, an appeal challenging the propriety of an eviction is moot."); Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 347 (App. Div. 1993) (tenant's right to remain on premises is moot where tenant voluntarily vacated premises despite a stay of ejectment). The removed tenant still has a right to seek, in the Law Division, damages arising from a wrongful eviction. Daoud, 402 N.J. Super. at 61. As plaintiff has been removed from the property and retains her breach of contract and related rights as discussed supra, we are satisfied the appeal is moot.

In any event, N.J.S.A. 2A:42-10.6 permits a judge in a possessory action of any type to stay a warrant for removal from dwelling premises, but not in excess of six months after entry of a judgment for possession, where it appears that hardship is presented because of the unavailability of other dwelling accommodations. Our Supreme Court has held that "extended stays of warrants for removal in situations not coming within the prescription of this statute are invalid as beyond the jurisdiction of the court." Hous. Auth. v. West, 69 N.J. 293, 301 (1976).

Here, the judgment of possession was entered on September 23, 2019, and the warrant for removal had previously been stayed until March 2, 2020. An additional order granting an extension to plaintiff throughout the process of her appeal would have been in direct violation of the six-month time limit delineated in N.J.S.A. 2A:42-10.6. Accordingly, the trial court properly denied plaintiff's order to extend the stay of the warrant for removal.[3] Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

---

[3] Although the court incorrectly found that plaintiff had not pled an unavailability of housing, it was nevertheless constrained by the plain-language of N.J.S.A. 2A:42-10.6. West, 69 N.J. at 301 (noting that N.J.S.A. 2A:42-10.6 permits "a judge in a possessory action of any type to stay a warrant for removal from dwelling premises, but not in excess of six months after entry of a judgment for possession, where it appears that hardship is presented because of the unavailability of other dwelling accommodations") (emphasis added).

Reversed and remanded as to A-2615-19 and dismissed as moot with respect to A-2652-19.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION